IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORAH FLAHERTY, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. |
| v. | **CLASS ACTION COMPLAINT** |
| MAYBELLINE LLC, and L'OREAL USA PRODUCTS, INC. | **JURY DEMANDED** |
| Defendants. | |

Now comes the Plaintiff, NORAH FLAHERTY ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, and for her Class Action Complaint against the Defendants, MAYBELLINE LLC and L'OREAL USA PRODUCTS, INC., ("Defendants"), Plaintiff alleges and states as follows:

**PRELIMINARY STATEMENTS**

1. This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq*., common law fraud, unjust enrichment, and breach of warranty, resulting from the illegal actions of Defendant, in intentionally labeling its skincare products with false and misleading claims that they are oil-free, when Defendant's products contain numerous oils. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest or costs, and is a class action in which members of the class are citizens of a State different from the Defendant.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District, and Defendants do business in the Northern District of Illinois.

## PARTIES

4. Plaintiff is an individual who was at all relevant times residing in Chicago, Illinois.

5. On information and belief, Defendant L'Oréal USA Products, Inc. is a Delaware corporation, whose principal place of business is located in New York City, New York.

6. On information and belief, Defendant Maybelline LLC is a New York limited liability company, whose principal place of business is located in New York City, New York.

7. On information and belief, Defendant Maybelline LLC is a wholly owned subsidiary of Defendant L'Oréal USA Products, Inc.

8. At all times relevant hereto, Defendants were engaged in the manufacturing, marketing, and sale of cosmetics.

## FACTS COMMON TO ALL COUNTS

9. Defendants manufacture, advertise, market, sell, and distribute skincare products throughout Illinois and the United States under the brand names "Maybelline" and "L'Oréal Paris."

10. During the Class Period Defendant's following products (the "Products") were advertised as oil-free when they in fact contained the listed oils:

   a. Maybelline Fit Me Matte + Poreless foundation: tocopherol, isododecane;

      b. Maybelline Fit Me Concealer: tocopherol, hydrogenated polysiobutene;

      c. L'Oréal Paris Infallible Pro-Matte: tocopherol acetate;

11. Plaintiff's most recent purchase of the Products was on or about November 3, 2020.

12. All of the Products contain oils, but Defendants intentionally advertise and label the Products as oil-free.

13. Persons, like Plaintiff herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the qualities of the products.

14. By making false and misleading claims about the qualities of the products, Defendants impaired Plaintiff's ability to choose the type and quality of products she chose to buy.

15. Therefore, Plaintiff has been deprived of her legally protected interest to obtain true and accurate information about her consumer products as required by law.

16. As a result, Plaintiff has been misled into purchasing products she would not have otherwise purchased.

17. Oil is a term that describes a material that is both hydrophobic and lipophilic. Oil can also be classified by the polarity of the material. Oils can be wholly non-polar such as hydrocarbons, or polar such as fatty acids. Oil comprises the following chemical functional groups:[1]

    a. hydrocarbons (alkanes, alkenes) —such as squalane commonly sold as squalane oil;
    b. triglycerides—such as glycerol tristearate also known as stearin;
    c. esters—such as ester oil;
    d. fatty acids—such as palmitic acid;
    e. certain silicones—such as alkyl dimethicone

---

[1] Tony O'Lenick, Polar vs. Nonpolar oils, 2008.
    https://www.cosmeticsandtoiletries.com/research/chemistry/17390254.html

    f. fatty alcohols-sterols

 18. All of the above functional groups can be characterized by the same physical properties commonly observed by laypersons including being less dense than water, being more viscous than water, and feeling slick or slippery to the touch.

 19. The following is a structural diagram of tocopherol:

-alkane

 20. Tocopherol is commonly known as vitamin E. As shown in the diagram in paragraph 19 above, tocopherol contains the alkane functional group. It would be defined as a polar oil. The compound has a density of 0.950 g/mL, compared to water's 1g/mL.

 21. The following is a structural diagram of tocopherol acetate:



-alkane

-ester

 22. Tocopherol acetate is defined as an ester and is more commonly called vitamin E acetate. As shown in the diagram in paragraph 21 above, tocopherol acetate contains the alkane,

4

ester functional group. It would be defined as a polar oil. The compound has a density of 0.96 g/mL, compared to water's 1g/mL.

23. The following is a structural diagram of hydrogenated polyisobutene:



-alkane

24. Hydrogenated polyisobutene is defined as an alkane. As shown in the diagram in paragraph 23 above, hydrogenated polyisobutene contains the alkane functional group. It would be defined as a non-polar oil. The compound has a density of 0.8 g/mL, compared to water's 1g/mL.

25. The following is a structural diagram of isododecane:



-alkane

26. Isododecane is defined as a hydrocarbon. As shown in the diagram in paragraph 25 above, isododecane contains the alkane functional group. It would be defined as a non-polar oil. The compound has a density of 0.750 g/mL, compared to water's 1g/mL.

27. Plaintiff purchased Defendants' products because Defendants' advertising claims that their products are oil-free.

28. Plaintiff would not have been able to understand that the Products contained oils without an advanced understanding of chemistry.

29. Furthermore, due to Defendants' intentional, deceitful practice of falsely labeling the Products as oil-fee, Plaintiff could not have known that the Products contained oils.

30. Plaintiff was unaware that the Products contained oils when she purchased them.

31. Plaintiff and the Class were deceived into paying money for products they did not want because the Products were labeled as oil free.

32. Worse than the lost money, Plaintiff, the Class, and Sub-Class were deprived of their protected interest to choose the type and quality of products they use on their bodies.

33. Defendants, and not Plaintiff, the Class, or Sub-Class, knew or should have known that the Products' express labeling stating "Oil-Free" was false, deceptive, and misleading, and that Plaintiff, the Class, and Sub-Class members would not be able to tell the Products' contained oils unless Defendants expressly told them.

34. Defendants employ professional chemists to create the chemical formulas of Defendants' products. Therefore, Defendants through their employees knew or should have known that the Products contained oils and that by labeling the Products as oil-free they were deceiving consumers.

35. On information and belief, Defendants through their employees did know that the Products contained oils, but chose to include "oil-free" labeling because they did not believe their customers were well educated enough to know the difference.

6

36. As a result of Defendants' acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

    a. Lost money;

    b. Wasting Plaintiff's time; and

    c. Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

37. Plaintiff brings this action on behalf of herself and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within four years prior to the filing of the Complaint through the date of class certification.

38. Plaintiff also brings this action on behalf of herself and all others similarly situated, as a member of the proposed sub-class (the "Sub-Class"), defined as follows:

> All persons within the State of Illinois who purchased the Products within ten years prior to the filing of the Complaint through the date of class certification.

39. Defendants, their employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

40. The Class and Sub-Class are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class and Sub-Class include thousands, if not

millions of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendants and their retailers.

41. This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class and Sub-Class are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

42. There are questions of law and fact common to the Class and Sub-Class affecting the parties to be represented. The questions of law and fact common to the Class and Sub-Class predominate over questions which may affect individual Class and Sub-Class members and include, but are not necessarily limited to, the following:

    a. Whether Defendants disseminated false and misleading information by claiming the Products were oil-free when they contained oils;

    b. Whether the Class and Sub-Class members were informed that the products contained oils;

    c. Whether the Products contained oils;

    d. Whether Defendants' conduct was unfair and deceptive;

    e. Whether Defendants unjustly enriched themselves as a result of the unlawful conduct alleged above;

    f. Whether Defendants breached express warranties to Plaintiff, and the Class and Sub-Class members;

    g. Whether there should be a tolling of the statute of limitations; and

    h. Whether the Class and Sub-Class members are entitled to restitution, actual damages, punitive damages, and attorneys' fees and costs.

43. As a resident of the United States and the State of Illinois who purchased the Products, Plaintiff is asserting claims that are typical of the Class and Sub-Class.

44. Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and Sub-Class.

45. Plaintiff will fairly and adequately protect the interests of the members of the Class and Sub-Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

46. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class members is impracticable. Even if every Class and Sub-Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many Class and Sub-Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

47. The prosecution of separate actions by individual members of the Class and Sub-Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class and Sub-Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class and Sub-Class members to protect their interests.

48. Plaintiff's claims and injuries are identical to the claims and injuries of all Class and Sub-Class members, because all claims and injuries of all Class and Sub-Class members are based on the same false labeling and same legal theories. All allegations arise from the identical, false, affirmative written statements made by Defendant when it claimed the Products are oil-free.

49. Defendants have acted or refused to act in respect generally applicable to the Class and Sub-Class thereby making appropriate final and injunctive relief with regard to the members of the Class and Sub-Class as a whole.

50. The size and definition of the Class and Sub-Class can be identified through records held by retailers carrying and reselling the Products, and by Defendants' own records.

### COUNT I
### VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq.*

51. Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

52. Plaintiff is a "person" as defined in 815 ILCS 505/1(c), as she is a natural person.

53. Defendants are both a "person" as defined in 815 ILCS 505/1(c), as they are both a company and a business entity and/or association.

54. 815 ILCS 505/2 states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

55. Through its representation that the Products were oil-free, Defendants made false promises, misrepresentations, concealments, suppressions, and omissions of material facts, with the intent that Plaintiff rely upon said false promises, misrepresentations, concealments, suppressions, and omissions of material facts.

56. 815 ILCS 505/10a states:

> (a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper...
>
> (c) [T]he Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

57. In taking the actions and omissions set forth above, and making the false promises, misrepresentations, concealments, suppressions, and omissions of material facts set forth above, Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act, including, but not limited to, 815 ILCS 505/2.

58. Defendant failed to comply with the requirements of the ILCFA, including, but not limited to, 815 ILCS 505/2 as to the Class and Sub-Class members with respect to the above-alleged transactions

59. By reason thereof, Plaintiff is entitled to a judgment against Defendant, declaring that Defendant's conduct violated 815 ILCS 505/2, enjoining Defendant from engaging in similar conduct in the future, and awarding actual damages, punitive damages, injunctive relief, costs, and attorneys' fees.

## COUNT II
## COMMON LAW FRAUD

60. Plaintiff incorporates all of the allegations and statements made above as if fully

reiterated herein.

61. Through its false statements on the Products' packaging, that the Products were oil-free, Defendants made false statements of material fact.

62. At the time Defendants made their statements to Plaintiff that the Products were oil-free, they knew, or reasonably should have known, that the statements described above were false.

63. At the time Defendants made the statements to Plaintiff, Defendants intended to induce Plaintiff to purchase the Products.

64. Plaintiff relied upon the truth of the statements described above and purchased the Products, only to find that the Products did in fact contain oils.

65. As a result of their reasonable reliance upon Defendants' false statements of material fact as set forth above, Plaintiff and other members of the Class and Sub-Class have suffered concrete and particularized injuries, harm, and damages which include, but are not limited to, the loss of money spent on products they did not want to buy, and stress, aggravation, frustration, inconvenience, emotional distress, mental anguish, and similar categories of damages.

### COUNT III
### UNJUST ENRICHMENT

66. Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

67. Plaintiff conferred monetary benefits to Defendants by purchasing the Products.

68. Defendants have been unjustly enriched by retaining the revenues derived from Plaintiff's purchase of the Products based on the false statements that the Products are oil-free.

69. Defendants' retention of the revenue it received from Plaintiff, and the Class and Sub-Class members, is unjust and inequitable because Defendants' false statements caused injuries

to Plaintiff, and the Class and Sub-Class members, as they would not have purchased the Products if they knew the Products contained oils.

70. Defendants' unjust retention of the benefits conferred on them by Plaintiff, and the Class and Sub-Class members, entitles Plaintiff, and the Class and Sub-Class members, to restitution of the money they paid to Defendants for the Products.

## COUNT IV
## BREACH OF EXPRESS WARRANTIES

71. Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

72. Defendants, as the manufacturers, designers, marketers, and sellers of the Products, expressly warranted that the Products were oil-free on the Products' packaging, on their corporate websites, and on retailer websites.

73. Defendants' express warranties that the Products were oil-free was part of the basis of the bargain between Plaintiff, and the Class and Sub-Class members, and Defendants.

74. However, the Products contain oils and do not conform to the express warranties Defendants made to Plaintiff, and the Class and Sub-Class members, that the Products are oil-free.

75. Furthermore, as described above, Defendants had actual knowledge of the above listed defects contained in the Products.

76. As a direct result of Defendants' breach of the express warranties it made to Plaintiff, and the Class and Sub-Class members, they have been injured, because they would not have purchased the Products on the same terms if they knew the Products contained oils contrary to what is listed on the packaging, and they did not gain the same benefits they bargained for when purchasing the Products.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendants as follows:

a. An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

b. An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

c. An order requiring Defendants, at their own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d. Judgment against Defendants in an amount to be determined at trial;

e. An order for injunctive relief prohibiting such conduct by Defendants in the future;

f. Judgment against Defendants for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

g. Any other relief deemed just and proper by this Court.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and costs to be awarded should Plaintiff prevail on any of her claims in this action.

RESPECFULLY SUBMITTED,

NORAH FLAHERTY

By: /s/ Todd M. Friedman
Attorney for Plaintiff
Illinois Attorney No. 6276496
Law Offices of Todd M. Friedman, P.C.
21550 Oxnard Street, Suite 780
Woodland Hills, California 91367
Phone: (877) 619-8966
Fax: (866) 633-0228
tfriedman@toddflaw.com

/s/ Steven G. Perry
Attorney for Plaintiff
Illinois Attorney No. 6330283
Law Offices of Todd M. Friedman, P.C.
333 Skokie Blvd., Suite 103
Northbrook, Illinois 60062
Phone: (224) 218-0875
Fax: (866) 633-0228
steven.perry@toddflaw.com

/s/ David B. Levin
Attorney for Plaintiff
Illinois Attorney No. 6212141
Law Offices of Todd M. Friedman, P.C.
333 Skokie Blvd., Suite 103
Northbrook, Illinois 60062
Phone: (224) 218-0882
Fax: (866) 633-0228
dlevin@toddflaw.com